UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____
                                :
GENTLE LASER SOLUTIONS, INC.,   :    Civil Action
LIBERTY MED SPA, INC., and      :    No. 06-665(NLH)
KEVIN T. CAMPBELL,              :
                                :
          Plaintiffs,           :    OPINION
                                :
     v.                         :
                                :
SONA INTERNATIONAL CORP.,       :
SONA LASER CENTERS, INC.,       :
THOMAS R. NOON, DENNIS R. JONES :
COOKIE JONES, JAMES H. AMOS,    :
JR., HEATHER ROSE, CAROUSEL     :
CAPITAL, INC., CYNOSURE, INC.   :
and JOHN DOE #1, in his         :
capacity as Personal            :
Representative and/or Executor  :
of the Estate of HORACE W.      :
FURUMOTO, Deceased.             :
                                :
          Defendants.           :
_____
```

**APPEARANCES:**

Ely Goldin, Esquire
20 Kings Highway West
Haddonfield, NJ 08033
*Attorney for Plaintiffs*

Susan M. Verbonitz, Esquire
Weir & Partners
1339 Chestnut Street
Suite 500
The Widener Building
Philadelphia, PA 19107
    And
Richard A. Johnston, Esquire (admitted *pro hac vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
*Attorneys for Defendants Cynosure, Inc. and the Estate of Horace
W. Furumoto, Deceased*

**HILLMAN**, District Judge

       On August 1, 2007, plaintiffs entered into a stipulation of

dismissal with Sona International Corp. ("SIC"), Sona Laser Centers, Inc. ("SLC"), Thomas R. Noon, Dennis R. Jones, Cookie Jones, James H. Amos, Jr., Heather Rose, and Carousel Capital, Inc., (collectively the "Sona entities" or "Sona").  Shortly thereafter, an amended complaint was filed on October 5, 2007. The remaining defendants, Cynosure, Inc. ("Cynosure") and the personal representative of the Estate of Horace W. Furumoto ("Furumoto")[1] (collectively "defendants"), have filed a motion to dismiss plaintiffs' amended complaint pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6).  For the reasons discussed below, we grant defendants' motion in part and deny it in part.

**I.   JURISDICTION**

There is complete diversity between plaintiffs and defendants, and the plaintiffs have plead an amount in controversy in excess of $75,000.00.  Therefore, this Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

**II.  BACKGROUND[2]**

Plaintiff Kevin T. Campbell is the sole shareholder of

---

[1] For ease of reference, "Furumoto" in this Opinion refers to the defendant, the personal representative of Furumoto's estate, and to Horace Furumoto.

[2] Much of the background provided by plaintiffs in their complaint pertains to the conduct of the Sona defendants.  Since those defendants have been dismissed, we concentrate on those allegations that pertain to the remaining defendants, Cynosure and Furumoto.

plaintiff Gentle Laser Solutions, Inc. ("GLS") and of plaintiff Liberty Med Spa, Inc. ("LMS").  GLS and LMS are franchises that operate Sona Med Spas primarily for the purpose of removing unwanted hair through laser treatments on individuals.  Campbell purchased the rights to become a Sona franchisee and incorporated GLS and LMS.

Defendant Cynosure develops and markets aesthetic treatment systems used to remove unwanted hair.  Furumoto was alleged to be either the president or chief operating officer of Cynosure. Plaintiffs allege that Furumoto at all relevant times maintained a position on Sona's board of directors.

Operation of a Sona franchise required following the "Sona Concept" using "Apogee Laser Technology" developed by Cynosure that was said to have given plaintiffs an edge over the competition.  A written "Apogee Laser Security Agreement" (the "laser agreement") entered into by Sona and its franchisees was countersigned by Furumoto on behalf of Cynosure.  Plaintiffs allege that as of March 4, 2003, Cynosure held a significant undisclosed equity stake in Sona, but that Cynosure's equity stake was concealed by Sona and that Cynosure conspired with Sona in that concealment.

Plaintiffs allege that the Cynosure Apogee lasers were incapable of eliminating unwanted hair on non-Caucasian customers and in order to treat non-Caucasian customers, they would have to

3

lease another laser which was substantially less effective and
required 25-50% more treatments than the Apogee laser.  In
addition, plaintiffs allege that the laser settings used within
the "Sona concept" were artificially low.  They state that when
plaintiff Campbell called Cynosure's technicians to service the
lasers that they told him that the low settings used by Sona had
very little effect on the customer to decrease the likelihood
that a customer would cancel the treatment package for reasons of
pain or discomfort.  Plaintiffs also allege that the Cynosure
technicians were instructed not to discuss the issue of laser
settings with the Sona franchisees.

Plaintiffs argue that defendants concealed these problems as
well as Cynosure's equity stake in Sona until after the
franchises were purchased and plaintiffs invested significant
sums.  Plaintiffs further allege that Cynosure's concealment of
its involvement in Sona's affairs and the problems with the Sona
lasers were part of a fraudulent scheme to use the Sona franchise
revenue stream to take Cynosure public, making millions for
Furumoto and other principals.

Plaintiffs brought claims for violation of the New Jersey
Franchise Practices Act ("FPA"), violation of the New Jersey
Consumer Fraud Act ("CFA"), common law fraud, negligent
misrepresentation, unjust enrichment and civil conspiracy.
Cynosure and Furumoto seek to dismiss plaintiffs' claims.  For

4

the reasons expressed below, defendants' motion is granted as to plaintiffs' claims under the Franchise Practices Act and for unjust enrichment, but denied as to the remaining claims.[3]

**III.   DISCUSSION**

**A.   Standard for Motion to Dismiss**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim. Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings

_____

[3] As explained infra, the remaining claims, violation of the CFA, common law fraud, negligent misrepresentation and civil conspiracy survive only as to plaintiffs' allegations concerning the sale of the Apogee lasers by Cynosure and Furumoto. Allegations concerning the sale of the Sona franchises do not pertain to Cynosure or Furumoto, but pertain only to the dismissed Sona defendants and are therefore dismissed as well.

give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)).  A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997).  The defendant bears the burden of showing that no claim has been presented.  Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir. 1999).  A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp.

v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**B.   New Jersey Franchise Practices Act**

Defendants argue that plaintiffs' Franchise Practices Act claim should be dismissed because Cynosure and Furumoto are not "franchisors" under the Act.

Under N.J.S.A. § 56:10-7, it is a violation of the FPA for any "franchisor, directly or indirectly, through any officer, agent or employee, to engage in" certain activities proscribed by the Act.  A "franchisor" is defined as a  "person who grants a franchise to another person."  N.J.S.A. § 56:10-3©.  A "person" is defined as "a natural person, corporation, partnership, trust, or other entity and, in case of an entity, it shall include any other entity which has a majority interest in such entity or effectively controls such other entity as well as the individual officers, directors, and other persons in active control of the activities of each such entity."  N.J.S.A. § 56:10-3(b).

Here, the parties agree under the definition of "person" that defendants did not have a majority interest in the Sona entities.  Rather, their dispute centers on the phrase "or effectively controls such other entity."  Defendants argue that they did not effectively control the Sona entities and, therefore, are not "persons" who are "franchisors" under the Act. Conversely, plaintiffs allege defendants did control the Sona

7

entities because Cynosure was a shareholder in SLC, and exercised control over SIC and/or SLC's business activities.

New Jersey law is silent as to the amount of control that must be exercised in order to "effectively control" another entity under this Act.[4]  In the absence of any controlling law where the New Jersey Supreme Court has spoken definitively on a particular issue, this Court will apply the substantive law of New Jersey and make an informed prediction as to how the court would rule.  Highlands Ins. Co. v. Hobbs Group, LLC, 373 F.3d 347, 351 (3d Cir. 2004) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938); Clark v. Modern Group Ltd., 9 F.3d 321, 326 (3d Cir. 1993)).  In doing so, the Court "... may consider a wide range of reliable sources, including relevant state precedents, analogous decisions and reasoned dicta, as well as the policies and doctrinal trends informing and emerging from those decisions," id. (citing Scotts African Union Methodist Protestant Church v. Conference of African Union First Colored Methodist Protestant Church, 98 F.3d 78, 92 (3d Cir. 1996)), while remaining "mindful not 'to expand state law in ways not foreshadowed by state

---

[4]  The word "control" is defined as "to exercise restraining or directing influence over," or "power or authority to guide or manage."  See Merriam-Websters' Collegiate Dictionary 272 (11th ed. 2006).  Black's Law Dictionary defines control as "to exercise power or influence over," "to regulate or govern," or "to have a controlling interest in."  Black's Law Dictionary 353 (8th ed. 2004).  "Effective" is defined as "producing a decided, decisive or desired effect."  See Merriam-Websters 397.

precedent.'" Id. (citing City of Philadelphia v. Beretta U.S.A. Corp., 277 F.3d 415, 421 (3d Cir. 2002)).

The parties offer suggestions as to the correct standard to apply in assessing whether defendants "effectively controlled" Sona. Defendants urge the Court to apply the standard used for "piercing the corporate veil" in order to assess the level of control. Under the veil-piercing standard, defendants argue that plaintiffs do not allege any facts that would show that Sona was grossly undercapitalized, that Sona failed to observe corporate formalities, or that Sona was the "mere facade" of Cynosure. See Craig v. Lake Asbestos of Quebec, Ltd., 843 F.2d 145, 150 (3d Cir. 1988) (finding corporate veil of a parent corporation may not be pierced under New Jersey law unless "the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent.")(citing State, Dep't of Environ. Protection v. Ventron Corp., 468 A.2d 150, 164 (N.J. 1983)).

Defendants also urge the Court to follow the reasoning used by the Minnesota District Court in Berglund v. Cynosure, Inc., No. 06-3901, 2007 WL 1825405, at *1 (D. Minn. June 22, 2007). The Berglund case is factually similar to this case and involves similar defendants and similar claims. Id. at *1-2. In Berglund, the court found that Cynosure was not liable under the Minnesota Franchise Act, the Illinois Franchise Disclosure Act,

9

the Maryland Franchise Registration and Disclosure Law or the

Michigan Franchise Investment Law.[5]  Id. at *7-8.  Since there

was no authority on the interpretation of the Minnesota Franchise

Act, the court relied on the Minnesota Supreme Court's

interpretation of similar language in the Minnesota's Securities

Act which requires that: "(1) the defendant actually participated

in the general operations of the violator; and (2) the defendant

---

[5]     The Court provided the following descriptions of the
referenced state statutes:

Minnesota Franchise Act:
Every person who directly or indirectly controls a
person liable under subdivision 1, every partner in a
firm so liable, every principal executive officer or
director of a corporation so liable, every person
occupying a similar status or performing similar
functions and every employee of a person so liable who
materially aids in the act or transaction constituting
the violation is also liable jointly and severally with
and to the same extent as such person....
Id. at * 7 (citing Minn.Stat. § 80C.17, subd. 2).

Illinois Franchise Act:
"The language of the IFDA regarding control persons is
virtually identical to the language of the MFA quoted
above." Id. at * 8(citing 815 Ill. Comp. Stat. 705/26).

Maryland Franchise Registration and Disclosure Law:
"That statute provides that '[j]oint and several liability
... extends to each person who directly or indirectly
controls a person liable under this section.'" Id. (citing
Md.Code Ann., Bus Reg. § 14-227(d)(1)(I)).

Michigan Franchise Investment Law:
"The Michigan statute's language regarding control person
liability is identical to the language in the Minnesota
statute quoted above." Id. (citing Mich. Comp. Laws Ann. §
445.1532).

had the power to control the specific transaction at issue." Id.
at *7 (citations omitted).  The court dismissed the claim and
held that plaintiff's alleged facts that "(1) Cynosure owned a
40% interest in Sona; (2) Cynosure guaranteed some of Sona's
leases; (3) Cynosure had an exclusive purchasing contract with
Sona; and (4) Furumoto, Cynosure's founder, served on the Sona's
board of directors" did not "... suggest that Cynosure
participated in Sona's general operations or that Cynosure had
the power to control the fraudulent statements Sona allegedly
made to the Minnesota Plaintiffs in connection with the sale of a
franchise from SLC to LTS." Id.  The Court also found that
Cynosure was not liable under the other state statutes which it
found similar in language to Minnesota's. Id.

     Although plaintiffs do not agree with the outcome in
Berglund, they advocate using case law interpreting securities
law as was done in Berglund to assess the level of control needed
here under the FPA.  Specifically, plaintiffs seek to impose
liability upon defendants using the "control person" standard
used in securities law, and cite to a decision from the District
of New York interpreting control under the Securities and
Exchange Act.  See In re Alstom SA Securities Litg., 454
F.Supp.2d 187, 210 (S.D.N.Y. 2006).  In In re Alstrom, the court
found that control as plead under Federal Rule of Civil Procedure
8(a) only requires notice and a showing that relief could be

11

granted under some set of facts.

If we were to follow plaintiffs' suggestion of evaluating "effectively control" using the "control person" standard, as a Court exercising diversity jurisdiction, we turn to New Jersey law to assess what standard it applies under its securities laws. See Chemical Leaman Tank Lines, Inc. v. Aetna Casualty and Surety Co., 89 F.3d 976, 983 (3d Cir. 1996) (stating that "[a]s a federal court sitting in diversity, we must apply the substantive law of New Jersey.") (citing Borse v. Piece Goods Shop, Inc., 963 F.2d 611, 613 (3d Cir. 1992)).  The New Jersey courts follow Federal securities law concepts in defining a "control person" under the New Jersey Uniform Securities Act, N.J.S.A. 49:3-71.[6] See Abrams v. Ohio Cas. Ins. Co., 731 A.2d 48, 51 (N.J.Super.A.D.

---

[6]   Subsection (d) of N.J.S.A. 49:3-71 states in pertinent part:

> Every person who directly or indirectly controls a seller liable under subsection (a) of this section, every partner, officer, or director of such a seller, or investment adviser, every person occupying a similar status or performing similar functions, every employee of such a seller or investment adviser who materially aids in the sale or in the conduct giving rise to the liability, and every broker-dealer, investment adviser, investment adviser representative or agent who materially aids in the sale or conduct are also liable jointly and severally with and to the same extent as the seller or investment adviser, unless the nonseller who is so liable sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts under paragraphs (1) through (5) of subsection (a) of this section which give rise to liability.

1999)(citing <u>Zendell v. Newport Oil Corp.</u>, 544 A.2d 878
(N.J.Super.A.D. 1988)).  New Jersey courts have interpreted
control person liability under Federal law as requiring "... a
showing of active participation in management," <u>id.</u> (citing
<u>Paracor Finance, Inc. v. General Elec. Capital Corp.</u>, 96 F.3d
1151, 1162-63 (9th Cir. 1996); <u>Northwestern National Insurance
Co. v. Alberts</u>, 769 F.Supp. 498, 509 (S.D.N.Y. 1991)), "or of
direct or indirect power over management or policies."  <u>Id.</u> at 51
(citing <u>Paracor</u>, 96 F.3d at 1162-63; <u>Wiley v. Hughes Capital
Corp.</u>, 746 F.Supp. 1264, 1281 (D.N.J. 1990)).  In <u>Abrams</u>, the
court held that plaintiff presented no evidence demonstrating
that the defendant "actively participated" in the management, or
exercised a "general power to direct management or policies."
<u>Id.</u>  The court relied on the SEC definition of control defined as
"the possession, direct or indirect, of the power to direct or
cause the direction of the management and policies of a person,
whether through the ownership of voting securities, by contract,
or otherwise."  <u>Id.</u> (citing 17 C.F.R. § 230.405 (1999)).

The level of participation to be a control person under New
Jersey's securities laws requires that the plaintiff plead facts
that could show some active participation in the management or
facts that could show power or influence over policy-making.  <u>See
id.</u>  The idea that the control must be active or influential
comports with the words used in the FPA.  The FPA requires that

in order for a person to be considered a franchisor, that person "... effectively control[] such other entity as well as the individual officers, directors, and other persons in *active control* of the activities of each such entity."  See N.J.S.A. § 56:10-3(b) (emphasis added).

For the purposes of this motion, the Court will assume that the New Jersey courts would follow the control person standard used in their interpretation of securities laws in interpreting "effectively control" under the FPA.  Using this interpretation, we turn to the factual allegations made by plaintiffs in their complaint in support of their claim that defendants effectively controlled Sona: (1) that Cynosure maintained a position on Sona's board of directors; (2) Cynosure held a significant undisclosed equity stake in Sona; and (3) Cynosure was a significant shareholder in SLC.[7]  Plaintiffs argue that these allegations are sufficient to survive a motion to dismiss under the notice pleading standard of Fed.R.Civ.P. 8(a).

Although notice pleading under Rule 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair

---

[7]  The other allegations cited by plaintiffs are legal conclusions not factual assertions.  See Twombly, 127 S. Ct. 1955, 1964-65 (stating that a formulaic recitation of the elements of a cause of action does not satisfy plaintiff's obligation to provide grounds for his entitlement to relief). (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

notice of what the ... claim is and the grounds upon which it rests," the allegations made by plaintiffs, assumed to be true, do not provide a set of facts that if proven could show that defendants "effectively controlled" Sona because they lack the element of active participation.  The three allegations at best indicate a "passive" role played by Cynosure in that it had a position on the board of directors, had an equity stake and was a shareholder.  Plaintiff has not plead any facts that suggest that Cynosure or Furumoto actively participated in the management of Sona or that they directed the policies of Sona.  There are no allegations that defendants exercised influence over Sona's daily activities.  There are no factual allegations that defendants had the power to direct the management of Sona.  In other words, even assuming that New Jersey courts would adopt a control person standard to determine whether defendants effectively controlled Sona under the FPA, plaintiffs have not met that standard. Although plaintiffs alleged facts that show that defendants had some role and could have exercised some influence, they have not alleged any facts that could show that defendants effectively controlled Sona.

Therefore, Cynosure and Furumoto are not franchisors under the FPA and, therefore, plaintiffs' FPA claim against defendants is dismissed.

C. **New Jersey Consumer Fraud Act**

The New Jersey Consumer Fraud Act ("Consumer Fraud Act" or "CFA"), N.J.S.A. 56:8-2, states in relevant part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice....

The definition section, N.J.S.A. 82-56:8-1©, states that "[t]he term 'merchandise' shall include any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale."

Here, the parties agree that if the claims against defendants are covered by the Franchise Practices Act, then the Consumer Fraud Act would not apply. However, since defendants are not franchisors under the FPA, the FPA does not apply. Thus, the issue is whether a franchise is "merchandise" under the CFA.

Defendants argue that the Third Circuit has held that a franchise is not considered "merchandise" under the CFA and, therefore, the statute does not apply. See J&R Ice Cream Corp. v. California Smoothie Licensing Corp., 31 F.3d 1259, 1271 (3d Cir. 1994). In J&R Ice Cream, the Third Circuit noted that no

16

Supreme Court of New Jersey case addressed the issue of whether a sale of a franchise was covered by the CFA.  It noted that a New Jersey Law Division case found that the Act included franchises, see Morgan v. Air Brook Limousine, Inc., 510 A.2d 1197 (N.J.Super.L.D. 1986), and a New Jersey Chancery Court decision, see Kugler v. Koscot Interplanetary, Inc., 293 A.2d 682 (N.J.Super.Ch.D. 1972), found that a cosmetic distributorship was covered by the Act, but that the case did not address the definition of "merchandise."

Although the Third Circuit noted that in the absence of any decision or indication by the highest state court the Federal courts must attribute "significant weight" to the lower state court decisions, see Nationwide Mut. Ins. Co. v. Budd-Baldwin, 947 F.2d 1098, 1101 n. 6 (3d Cir. 1991), it found "... many indications that the Supreme Court of New Jersey would not adopt the reasoning in Morgan or apply the result in Koscot,..." and rejected a construction that would include franchises in the CFA's definition of "merchandise." Id. at 1273.

The Third Circuit's decision in J&R Ice Cream was called into question by the Appellate Division of the New Jersey courts in Kavky v. Herbalife Intern. of America, 820 A.2d 677, 679 (N.J.Super.A.D. 2003) (stating that it was unable to agree with the Third Circuit's unduly restrictive interpretation of the CFA).  The court in Kavky did not disagree with the result in J&R

Ice Cream because the franchise appeared to have involved "a substantial and complex commercial transaction, which likely fell within the Franchise Practices Act." Id. However, it disagreed with the reasoning that a franchise was not merchandise because "... that course would deprive the citizens of New Jersey of protection under the Act in pyramid sales schemes, and similar mass public frauds, a consequence we believe the State Supreme Court would reject." Id. at 679-80.

In Kavky, the plaintiff purchased a franchise offered by Herbalife which was advertised to the general public at large. Id. at 678-79. The plaintiff claimed that although he paid Herbalife for them in advance, the company never provided him with customer leads promised as part of the franchise. Id. The court found that the franchise was covered by the CFA. Id. Its finding was based on the idea that the role of the CFA is to cover "... franchises that are not sufficiently substantial to come within the Franchise Practices Act." Id. at 684. The court was concerned that the CFA should act as protection for victims of schemes who are duped into trying to become merchants or distributors of products. Id.

Here, defendants argue that they are not franchisors so the FPA does not apply to them. They also argue that the CFA does not apply because it does not apply to franchises. It seems that this may be the type of situation that the Appellate Division of

18

the New Jersey court was trying to circumvent in its discussion in Kavky - a sale structured so as to fall outside of the FPA, but where the merchandise is described as a franchise so as to also fall outside of the CFA.

Irrespective of the concerns of the New Jersey Appellate Division, defendants state that this Court is bound by the decision of the Third Circuit in J&R Ice Cream, and therefore we must dismiss the claim. See A.H. Meyers & Co. v. CNA Ins. Co., 88 Fed.Appx. 495, 499 (3d Cir. 2004).  In A.H. Meyers, the Third Circuit stated that "no intervening decision from the New Jersey Supreme Court has cast doubt on the correctness of" J&R Ice Cream, and affirmed the District Court's dismissal of plaintiff's CFA claim.  Although the decision in Kavky was available to the Third Circuit, the Court did not address the case in its opinion. See id.

We note that the CFA is a New Jersey state statute and that we defer to the state in the interpretation of its laws. However, as a District Court we are bound to follow the precedent of the Appellate Court in this Circuit.  The Third Circuit has affirmed its decision in J&R Ice Cream and made clear it will not rule otherwise until the New Jersey Supreme Court issues a contrary opinion on the matter.[8]

---

[8]  Case law instructs this court to accord "proper regard" but not "conclusive effect" to the decision of the state appellate court.  See Largoza v. General Elec. Co., 538 F.Supp. 1164, (D.C.Pa. 1982)(stating that "[i]n absence of an

Therefore, to the extent that the merchandise at issue is a franchise, under the law in this Circuit it is not covered under the CFA.  However, plaintiffs also claim that they executed an "Apogee Laser Security Agreement" that was countersigned by Furumoto on behalf of Cynosure.  The Apogee lasers are products that were manufactured by Cynosure.  Plaintiffs allege that Cynosure and Furumoto concealed material information about the effectiveness of the Apogee lasers at the time of sale, particularly that they were incapable of eliminating unwanted hair on non-Caucasian customers, and that they knew the lasers were to be used at artificially low and ineffective settings.[9] The Apogee laser is a good or commodity included in the

---

authoritative pronouncement from the state's highest tribunal, decisions of the lower state appellate courts should be accorded "'proper regard,' but not conclusive effect." (citing <u>McKenna v. Ortho Pharmaceutical Corp.</u>, 622 F.2d 657, 662 (3rd Cir. 1980), <u>cert.</u> <u>denied</u>, 449 U.S. 976 (1980)).  While we might pause to ponder the import of the <u>Kavky</u> decision if <u>J&R Ice Cream</u> remained the only relevant decision from the Third Circuit, here the Circuit reaffirmed its holding in <u>J&R Ice Cream</u> after the state appellate court issued its opinion.  While <u>A.H. Meyers</u> does not expressly acknowledge the <u>Kavky</u> decision we assume that the Court was aware of the decision and choose to ignore it.  We believe that in such a situation (i.e. no controlling law from the highest state court and a reaffirmation of the Circuit's prediction of state law subsequent to a state intermediate appellate decision) that our duty to follow the Third Circuit precedent trumps our concomitant duty to give state law "proper regard."

[9] Plaintiffs also allege that defendants concealed the ineffectiveness of Meladine.  Meladine was not marketed or sold by Cynosure or Furumoto.  The ineffectiveness of Meladine has nothing to do with the effectiveness of the Apogee lasers and, therefore, is not a basis for a claim of fraud against them.

definition of "merchandise."  See N.J.S.A. 82-56:8-1©.  In this
respect, this case is distinguishable from J&R Ice Cream because
the plaintiffs here are suing the manufacturer of the product,
not the franchisor.  Also, part of their claims pertain to
statements made by the defendants about the product and concern
an agreement signed by defendants to purchase the product.

Thus, the claims directed at Cynosure or Furumoto regarding
the sale of the Apogee lasers are covered by the CFA.
Plaintiffs' claims regarding the Sona franchises are not.
Therefore, plaintiffs have plead sufficient facts to support a
CFA claim against defendants limited to the sale of the Apogee
lasers.

**D.**    **Common Law Fraud and Negligent Misrepresentation**

Defendants seek to have plaintiffs' common law fraud and
negligence misrepresentation claims dismissed on the grounds that
plaintiffs did not plead their fraud claims with particularity as
required under Fed.R.Civ.P. 9(b), and because plaintiffs cannot
met the elements of a fraud or negligent misrepresentation claim
under New Jersey law.

**1.   Rule 9(b)**

Under Rule 9(b), a plaintiff must plead fraud with
particularity and state "the 'circumstances' of the alleged fraud
in order to place the defendants on notice of the precise
misconduct with which they are charged, and to safeguard
defendants against spurious charges of immoral and fraudulent

behavior." See, e.g., Lum v. Bank of America, 361 F.3d 217 (3d Cir. 2004)(quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984)).  The specificity requirement is satisfied "by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" Id.  Plaintiff should also state who made the alleged misrepresentation to whom as well as the general content of the misrepresentation.  Id. (citing Saporito, 843 F.2d at 675; Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658-59 (3d Cir. 1998); Klein v. General Nutrition Co., Inc., 186 F.3d 338, 345 (3d Cir. 1999)).

Although most of the allegations in plaintiffs' complaint are directed against the Sona defendants with regard to the franchise and not specifically against Cynosure or Furumoto, plaintiffs have alleged that Cynosure and Furumoto made false allegations regarding the sale of the Apogee lasers.  The allegations state that Cynosure and Furumoto concealed material information about the effectiveness of the Apogee lasers in eliminating unwanted hair on non-Caucasian customers, and that they knew that the lasers were to be used at artificially low and ineffective settings so as to avoid cancellations due to customer complaints of pain.[10]

---

[10]  Plaintiffs have not brought a breach of contract claim against defendants concerning the sale agreement for the Apogee

These allegations put defendants on notice as to who was involved, what alleged misrepresentations were made and when thereby putting defendants on adequate notice of the allegations made against them.  Thus, plaintiffs have satisfied the requirements under Rule 9(b).

**2.  Common Law Fraud Claim**

To prove a common law fraud claim under New Jersey law, plaintiffs must show: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367 (N.J. 1997) (citing Jewish Ctr. Of Sussex County v. Whale, 432 A.2d 521, 524 (N.J. 1981)). "Misrepresentation and reliance are the hallmarks of any fraud claim, and a fraud cause of action fails without them."  Banco Popular North America v. Gandi, 876 A.2d 253, 261 (N.J. 2005) (citations omitted).

---

lasers, and defendants have not argued that plaintiffs' fraud claims are barred by the economic loss doctrine (doctrine prohibiting plaintiff from recovering in tort economic losses to which they are entitled only by contract).  See Slim CD, Inc. v. Heartland Payment Systems, Inc., No. 06-2256, 2007 WL 2459349, at *9 (D.N.J. Aug. 24, 2007) (citing Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 310 (2002)).  Thus, the parties appear to agree that the fraud claims are extrinsic to any contract claim. See id. (quoting "with the example of fraud, to break a promise is to breach a contractual duty; to falsely state that one intends to honor a promise is a misstatement of present fact and breaches a separate and extraneous duty not to commit fraud.")(citing Emerson Radio Corp. v. Orion Sales, Inc., No. 95-6455, 2000 WL 49361, at *7 (D.N.J. 2000)).

Plaintiffs claim that the lasers sold to them by Cynosure and Furumoto did not effectively treat non-Caucasian customers and were set artificially low.  They claim that defendants knew of the ineffectiveness of the lasers.  Plaintiffs also allege that they had a direct business relationship with Cynosure and Furumoto and relied on their misstatements.  Plaintiffs state that Cynosure technicians commented on the "artificially low settings" used by Sona so that the treatments would be less painful and customers less likely to cancel future treatments due to pain, and that they were instructed by Cynosure not to comment on Sona's protocols.  Defendants argue that even if the lasers did not effectively treat a portion of the population, the laser agreement did not obligate them to disclose anything regarding the system that Sona developed.

Although it was the Sona defendants who sold the Sona system, defendants did have a equity stake in the company selling the Sona franchises, which plaintiffs maintain was undisclosed at the time they entered into the franchise, and Furumoto was a member of the Sona board.  Plaintiffs' fraud claim is based on the alleged facts that defendants knew at the time they entered into the laser agreement with plaintiffs that the lasers they were selling were not effective for a certain portion of the population and that the lasers were to be used at artificially low settings.  Therefore, plaintiffs have alleged adequate facts in support of their fraud claim at this stage.

24

### 3.  Negligent Misrepresentation

To establish a claim for negligent misrepresentation, a plaintiff must show "'[a]n incorrect statement, negligently made and justifiably relied on, which results in economic loss.' " Konover Const. Corp. v. East Coast Const. Services Corp., 420 F.Supp.2d 366, 370 (D.N.J. 2006) (quoting McClellan v. Feit, 870 A.2d 644, 648 (N.J.Super.A.D. 2005) (citation omitted)).  The "actual receipt and consideration of any misstatement remains central to the case of any plaintiff seeking to prove that he or she was deceived by the misstatement or omission." Kaufman v. i-Stat Corp., 754 A.2d 1188, 1195-96 (N.J. 2000).  Negligent misrepresentation is easier to prove than fraud because it does not require scienter as an element. Id.

Plaintiffs have plead that defendants failed to disclose that the Apogee lasers were allegedly ineffective for certain individuals and less effective using Sona protocols.  Plaintiffs plead facts suggesting Cynosure and Furumoto knew the lasers would be used as part of a Sona franchise and that they relied upon the effectiveness of the lasers in making their decision to become a Sona franchisee.  Thus, plaintiffs have plead enough facts to go forward with their claim for negligent misrepresentation.

### E.  Unjust Enrichment

Plaintiffs argue that they spent a considerable sum in opening their franchise and expected a return on their

investment.  They allege that in their capacities as shareholders of Sona and/or as contracting parties, Cynosure and Furumoto received benefits from the laser agreement with plaintiffs and thus were unjustly enriched.

"To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994).  "The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." Id.

Plaintiffs' claim for unjust enrichment fails because it is based on the idea that Cynosure and Furumoto are the same entity as Sona.  As explained earlier in this Opinion, Cynosure and Furumoto are separate entities and did not effectively control Sona.  The allegations regarding inducements to enter into a franchise and expectations for returns on the investment are directed at Sona, not Cynosure or Furumoto.  The allegations that pertain to Cynosure and Furumoto concern the laser agreement. Those allegations do not amount to a claim of unjust enrichment because it involves a simple purchase agreement for the sale of lasers.  Plaintiffs received the lasers that they contracted for and, therefore plaintiffs' claim for unjust enrichment is dismissed.

26

###### F.   <u>Civil Conspiracy</u>

"A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to injure another, and an overt act that results in damage." <u>Morgan v. Union County Bd. of Chosen Freeholders</u>, 633 A.2d 985 (N.J.Super.A.D.1993) (quotations and citations omitted).  The primary requirement for a civil conspiracy is the existence of a separate underlying tort.  <u>In re Orthopedic Bone Screw Products Liability Litigation</u>, 193 F.3d 781, 789 (3d Cir. 1999).  A plaintiff "cannot sue a group of defendants for conspiring to engage in conduct that would not be actionable against an individual defendant." <u>Id.</u>  "Instead, actionable civil conspiracy must be based on an existing independent wrong or tort that would constitute a valid cause of action if committed by one actor."  <u>Id.</u> (internal quotations and citations omitted)).

Since plaintiffs' fraud and negligent misrepresentation claims survive, plaintiffs have an underlying tort claim and therefore meet the primary requirement for conspiracy.  <u>Id.</u>  In addition, plaintiffs have alleged that Cynosure's technicians knew about the "artificially low settings" and were told not to discuss Sona's policies concerning the settings on the lasers. As such, plaintiffs have alleged adequate facts for their conspiracy claim to go forward regarding the sale of the Apogee

lasers.

**IV.   <u>CONCLUSION</u>**

For the foregoing reasons, plaintiffs' claim under the New Jersey Franchise Practices Act, and claim for unjust enrichment are dismissed.   Plaintiffs have plead adequate facts in support of their claim under the New Jersey Consumer Fraud Act and claims for common law fraud, negligent misrepresentation and conspiracy entitling them to offer evidence in support of their claims.   <u>See Twombly</u>, 127 S. Ct. at 1969 n.8.   An Order consistent with this Opinion will be entered.


<u>    s/Noel L. Hillman    </u>
NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey

28